BENJAMIN G. HOPKINS, Appellant, *v.* DAVID B. WATT, Appellee.

### APPEAL FROM SCOTT.

Where a managing partner in the settlement of the partnership accounts, with a view to a sale of his interest, makes a representation relative to the extent of the liabilities of the firm, upon the faith of which his copartner, who has no actual knowledge of the partnership affairs, purchases out his interest in the concern, and

assumes the payment of the debts due by the firm, which representation turns out to be untrue, whereby his copartner sustains a loss; the latter may have relief in chancery; and it is immaterial whether the representation was intentionally or innocently made.

Where partners deal with each other touching the partnership affairs, and their means of knowledge relative to the situation of the firm is not equal, he who has the superior information must not make any representations which are untrue; if he does, a court of chancery will interfere and relieve the injured party, although the partner making the representation was not guilty of fraud in fact.

THE decree was entered in this cause, at September term, 1850, by WOODSON, Judge, in Scott Circuit Court.

The facts of the case are stated in the opinion of the court.

D. A. SMITH, for appellant.

BROWN & YATES, for appellee.

TREAT, C. J.   Hopkins and Watt were merchants, and partners in trade.   The business was conducted by Hopkins and his son, a clerk in the store, although Watt was occasionally in the store, and had access to the books of the concern.   While the partnership was progressing, Hopkins paid $128 to Bennett, a creditor of the firm, and charged him on the books with $138. He also transmitted funds to Greely & Gale, creditors and factors of the firm, who therewith paid for the firm $80.25 to Bennett, and $56.20 to E. A. and R. Filley.   He charged Greely & Gale with the gross amount, but omitted to credit them with the sums paid Bennett and the Filleys.   He charged the latter with the amounts received from Greely & Gale.   The books, therefore, showed that the firm owed Greely & Gale and Bennett $146.45 less than was actually due them.   With a view to a dissolution, Hopkins and his son, aided by Watt, made an inventory of the stock, debts, and credits of the concern; and Watt purchased the entire interest of Hopkins for $900, and agreed to pay all the debts against the firm.   The parties then executed a written agreement embodying the terms of the dissolution.   While this agreement was in preparation, and the books and invoice were before the parties, Watt desired that the agreement should only bind him to discharge the debts appear-

ing to be due by the invoice; but Hopkins insisted that it should be general, and embrace all the debts. Watt gave as a reason, that he was not acquainted with the liabilities of the firm, as Hopkins had managed its affairs; and Hopkins replied, that he knew of no other debts than those on the books and invoice. Watt then remarked to Hopkins, that he had transacted all the business, and contracted all the debts, and must know whether there were any other liabilities than those mentioned in the invoice; to which Hopkins answered, that there were no other debts than those on the invoice; that they were all. After paying the $900 to Hopkins, and the debts of the firm, Watt filed a bill in chancery against Hopkins, and obtained a decree for $73, one half of the excess due to Bennett, and Greely & Gale, above what the books and invoice showed. The propriety of that decree is the only question in the case.

The decree was clearly right. Hopkins had the management of the partnership business, made the entries in the books, and ought to have known the extent and nature of the liabilities. Watt had no knowledge of the liabilities, except what he derived from the books, and what he learned from Hopkins. There was, therefore, an inequality in the situation of the parties. Their means of knowledge were not the same. Hopkins had the superior information. In this state of things, Hopkins was called upon to give the true condition of the partnership indebtedness. The response was a positive assertion, that the books and inventory disclosed all the liabilities. On the faith of this assurance, Watt purchased the interest of Hopkins, and undertook to discharge all of the debts. Under these circumstances, he had a clear right to rely on the representation, and if untrue, and he was injured thereby, to hold Hopkins responsible. And it is immaterial, whether the misrepresentation was intentionally or innocently made. The consequences to Watt are the same in either case. If the books had correctly stated the liabilities, and there had been no actual fraud on the part of Hopkins, the case would be different. Watt might then be charged with negligence, in not examining them, and ascertaining the extent of the indebtedness.

The decree is affirmed.                    *Decree affirmed.*